IN THE UNITED STATES COURT OF FEDERAL CLAIMS

```
_____
                                   )
CITY OF WILMINGTON, DELAWARE,      )
a municipal corporation of the     )
State of Delaware,                 )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   No. 16-1691C
                                   )   (Judge Williams)
UNITED STATES OF AMERICA,          )
                                   )
            Defendant.             )
_____)
```

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS ON GOVERNMENT LIABILITY FOR INTEREST AND PENALTIES**

## TABLE OF CONTENTS

I.   COUNTER-STATEMENT OF THE ISSUES ........................................................................ 1

II.  STATEMENT OF THE CASE.......................................................................................... 1

III. SUMMARY OF THE ARGUMENT ................................................................................. 1

IV. ARGUMENT..................................................................................................................... 2

      A.    Clean Water Act Waived the United States' Sovereign Immunity for Interest. ..... 2

          1.    The First Sentence of § 1323(a) Waives the United States' Sovereign Immunity for Suits Claiming Violations of Local Requirements Concerning the Control and Abatement of Water Pollution, Including But Not Limited to Reasonable Service Charges. ............................................. 3

          2.    The Third Sentence of § 1323(a) Strips the United States of Any Other Immunities under Any Law or Rule of Law............................................... 4

          3.    The Army Corps of Engineers' Supervising Agency, the Department of Defense, Has Itself Rejected the Argument That the United States Makes Here ................................................................................................................ 7

      B.    The City Properly Assessed Interest Under Its Ordinance .................................... 9

      C.    Wilmington's Complaint Does Not Contain an Express Claim for Penalties ...... 11

V.   CONCLUSION................................................................................................................ 11

Letter from Deputy Dir. of Navy, Energy & Envtl. Readiness Div. (N45) (April 9, 2012)....Ex. A

# TABLE OF AUTHORITIES

**Cases**                                       **Page**

*Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008)..................................................................5

*Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687 (1995).................5

*Collector v. Hubbard*, 79 U.S. 1 (1871) ..........................................................................................5

\* *DeKalb County v. United States*, 108 Fed. Cl. 681 (Fed. Cl. 2013) ...............................3, 5, 6, 8

*FAA v. Cooper*, 566 U.S. 284 (2012).............................................................................................5

*Green v. Biddle*, 21 U.S. 1 (1823)..................................................................................................5

\* *Library of Congress v. Shaw*, 478 U.S. 310 (1986).....................................................................4

*Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825 (1988) ..........................................5–6

*Marathon Oil Co. v. United States*, 374 F.3d 1123 (Fed. Cir. 2004)..............................................2

*Mobil Oil Explor. & Producing Se., Inc. v. United States*, 544 U.S. 1031 (2005) .....................2–3

*New York State Department of Environmental Conservation ("NY DEC") v. U.S. Department of Energy*, 772 F. Supp. 91 (N.D.N.Y. 1991) ......................................................................................6

*Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989) .......................................................................3

*Potter v. United States*, 155 U.S. 438 (1894).................................................................................5

*Norfolk S. Ry. v. Kirby*, 543 U.S. 14 (2004) ..................................................................................5

*Seminole Tribe v. Florida*, 517 U.S. 44, 66 (1996) .......................................................................4

\* *State ex rel. Zebley v. Mayor of Wilmington*, 52 Del. 564 163 A.2d 258 (Del. 1960)...............11

**Statutes**

10 U.S.C. § 111(b)(6) ......................................................................................................................7

10 U.S.C. § 3064(a)(4).....................................................................................................................7

28 U.S.C. § 1491(a)(1).....................................................................................................................3

28 U.S.C. § 2516(a) .........................................................................................................................4

**Statutes—Continued:** **Page**

28 U.S.C. § 2674 ................................................................................................................6

33 U.S.C. § 1342(p)(2)(C) ................................................................................................10

33 U.S.C. § 1342(q)(1) .....................................................................................................10

\* 33 U.S.C. § 1323 ...............................................................................................4, 6, 8, 11

\* 33 U.S.C. § 1323(a) ............................................................................................. *passim*

\* 33 U.S.C. § 1323(c)(1)(B) .........................................................................................6, 10

42 U.S.C. § 9620(a)(1) .......................................................................................................3

**Ordinances**

\* Wilmington Code § 45-53 ..........................................................................................9, 10

\* Wilmington Code § 45-176(c) ...................................................................................9–12

**Miscellaneous**

Pub. L. No. 111-378, 124 Stat. 4128 (2011) ..................................................................6, 8

Plaintiff City of Wilmington, Delaware ("Wilmington") respectfully submits this brief in opposition to the Motion for Judgment on the Pleadings on Government Liability for Interest and Penalties ("Motion") submitted by Defendant United States ("United States" or "Government"). In support of this opposition, Wilmington relies upon this brief, the pleadings, and an April 9, 2012 letter from the Deputy Director of the Energy and Environmental Readiness Division of the Navy, which is attached to this motion as Exhibit A.

**I.     COUNTER-STATEMENT OF THE ISSUES**

1.     Whether the Court should hold that the Government's waivers of sovereign immunity in 33 U.S.C. § 1323 extend to interest, and further hold that Wilmington has the legal authority under its Code to charge interest on past due payments for stormwater charges.

2.     Whether Wilmington's Complaint contains a claim for penalties.

**II.    STATEMENT OF THE CASE**

This case involves Wilmington's effort to collect long past due stormwater charges and associated interest against five properties owned by the United States within the city limits. As of the filing of the Complaint, Wilmington seeks $1,452,578.19 in stormwater charges but not $124,790.21 in penalties.

**III.   SUMMARY OF THE ARGUMENT**

Section 313(a) of the Clean Water Act, 33 U.S.C. 1323(a), includes two waivers of sovereign immunity. The first two sentences in § 1323(a) waive the Government's immunity for claims that it failed to comply with local requirements concerning the control and abatement of water pollution, including but not limited to the payment of reasonable service charges. The third sentence of § 1323(a), independent from the first waiver, unambiguously waives "any immunity . . . under any law or rule of law," which includes immunity against payment of interest charges.

The entity with control over the properties at suit, the U.S. Army Corps of Engineers, is supervised by the Department of Defense ("DoD"), which has already concluded that interest claims are payable. Based on a summary provided in a publicly-available Navy guidance letter, the DoD has apparently agreed with Wilmington that the United States is liable for interest on stormwater charges incurred after January 4, 2011. Wilmington's pending request for discovery on DoD's memorandum should be resolved before judgment is entered.

By suggesting that the phrase "sewer system charges" necessarily excludes stormwater charges, the United States misconstrues Wilmington's ordinance providing interest on unpaid stormwater charges. The titles and structure of Wilmington's ordinances reflect the fact that its sewer systems convey stormwater, and that interest is properly imposed on past-due stormwater fee payments in the same manner as drinking water and sewage treatment bills. Wilmington's long-standing implementation of this interpretation is proper as a matter of local law and is fully consistent with the Clean Water Act.

Wilmington is not seeking penalties against the United States. The Complaint neither contains a claim for penalties nor expressly seeks penalties against the United States. Wilmington acknowledges that penalties were embedded in the principal amount due as a matter of its billing procedures and stipulates that Wilmington's damages award should be adjusted to exclude any such embedded penalties.

IV.  **ARGUMENT**

    A.  **Clean Water Act Waived the United States' Sovereign Immunity for Interest.**

The parties agree that "a waiver of sovereign immunity for pre- and post-judgment interest must be separate and distinct from the general waiver of sovereign immunity upon which the suit is based." Mot. at 4 (citing *Marathon Oil Co. v. United States*, 374 F.3d 1123, 1126–27 (Fed. Cir. 2004), *cert. denied sub nom*, *Mobil Oil Explor. & Producing Se., Inc. v. United States*, 544 U.S.

2

1031 (2005)). The statute at issue here, however, contains not one but two waivers of sovereign immunity. The first waiver provides "the general waiver of sovereign immunity upon which the suit is based." *Id.* The second, separate, and distinct waiver unambiguously encompasses interest.

> **1. The First Sentence of § 1323(a) Waives the United States' Sovereign Immunity for Suits Claiming Violations of Local Requirements Concerning the Control and Abatement of Water Pollution, Including But Not Limited to Reasonable Service Charges.**

The first waiver of sovereign immunity is for failing to comply with all local requirements "respecting the control and abatement of water pollution" which includes but is not limited to "reasonable service charges." 33 U.S.C. § 1323(a). Specifically, the statute states that:

> Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants . . . shall be subject to, and comply with, all . . . local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner.

*Id.* This passage is sufficient, without more, to waive the United States' sovereign immunity and allow Wilmington to sue it under the Tucker Act for damages relating to stormwater charges. *See DeKalb County v. United States*, 108 Fed. Cl. 681, 694–96 (Fed. Cl. 2013) (first sentence in § 1323(a) sufficient to waive sovereign immunity under the Tucker Act, 28 U.S.C. § 1491(a)(1), and allow a claim for redress for unpaid stormwater bills); *cf. Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 10 (1989) (discussing the substantially similar sovereign immunity waiver in 42 U.S.C. § 9620(a)(1) and concluding that "[t]his is doubtless an unequivocal expression of the Federal Government's waiver of its own sovereign immunity, since we cannot imagine any other plausible

3

explanation for this unqualified language.") (internal citations omitted; *overruled on other grounds*, *Seminole Tribe v. Florida*, 517 U.S. 44, 66 (1996)).

In this case, payment of stormwater charges is a local requirement, and the first two sentences of § 1323 waive the United States' sovereign immunity to claims that the Government failed to meet this requirement. But the payment of interest on unpaid stormwater charges is another local requirement. The answer to the issue at hand—whether the United States has waived its sovereign immunity to paying interest—is found in the third sentence of § 1323(a). *See Library of Congress v. Shaw*, 478 U.S. 310, 314 (1986) ("In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award. This requirement of a separate waiver reflects the historical view that interest is an element of damages separate from damages on the substantive claim.").

### 2. The Third Sentence of § 1323(a) Strips the United States of Any Other Immunities under Any Law or Rule of Law

The third sentence of § 1323(a) contains a second, broader waiver of sovereign immunity separate and distinct from the first waiver:

> This subsection shall apply ***notwithstanding any immunity*** of such agencies, officers, agents, or employees ***under any law or rule of law***.

33 U.S.C. § 1323(a). The prohibition on interest claims against the United States is based on "the traditional ***legal rule*** regarding the immunity of the United States from interest." *Library of Congress*, 478 U.S. at 317. This rule was subsequently codified as ***law***. 28 U.S.C. § 2516(a) ("Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof."). The United States' usual sovereign immunity from interest is based on a rule of law that became law, and the third sentence of § 1323(a) clearly waives such law and such rule of law. And this waiver of sovereign immunity is neither equivocal nor ambiguous, as there is no plausible way

4

to interpret "notwithstanding any immunity . . . under any law or rule of law" to exclude interest. *See FAA v. Cooper*, 566 U.S. 284, 290–91 (2012) ("Ambiguity exists if there is a plausible interpretation of the statute that would not authorize" a claim against the United States); *DeKalb County*, 108 Fed. Cl. at 695 ("In order to waive the government's sovereign immunity, Congress must use language that is unequivocal and unambiguous."); *see also Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 31 (2004) ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind.") (citations omitted); *Green v. Biddle*, 21 U.S. 1, 89–90 (1823) ("[W]here the words of a law, treaty, or contract have a plain and obvious meaning, all construction, in hostility with such meaning, is excluded."); *cf. Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 219–220 (2008) ("Congress' use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind."); *Collector v. Hubbard*, 79 U.S. 1, 15 (1871) (stating "it is quite clear" that a statute prohibiting the filing of suit "in any court" "includes the State courts as well as the Federal courts," because "there is not a word in the [statute] tending to show that the words 'in any court' are not used in their ordinary sense.").

It cannot be argued that the third sentence creates a coterminous waiver no broader than the first two sentences because such a construction is belied by the second sentence of § 1323(a), which begins with "[t]he preceding sentence shall apply . . . ." Congress imposed no such limit on the third sentence. Significantly, any such contention would also improperly render the third sentence as mere surplusage. *See Potter v. United States*, 155 U.S. 438, 446 (1894) ("Its presence . . . cannot be regarded as mere surplusage; it means something."); *see also Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 698 (1995) ("A reluctance to treat statutory terms as surplusage supports the reasonableness of [plaintiff's] interpretation."); *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 837 & n.11 (1988) (Supreme Court is

5

"hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."). Moreover, if Congress had wanted to exclude interest from the scope of the third sentence's broad waiver, Congress clearly knew how to do so, as evidenced by the Federal Tort Claims Act. *See* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, ***but shall not be liable for interest prior to judgment*** or for punitive damages.") (emphasis added).

The case cited by the United States in its motion, *New York State Department of Environmental Conservation ("NY DEC") v. U.S. Department of Energy*, is distinguishable. *See* Mot. at 6 (*quoting* 772 F. Supp. 91, 105 (N.D.N.Y. 1991)). That case focused on the question of whether a stormwater charge amounted to a permissible local fee or impermissible local tax, an issue of which this Court is well aware. *See DeKalb County*, 108 Fed. Cl. at 696–706. Any persuasive authority *NY DEC* may have had was stripped by Congress's subsequent revision of § 1323 to clarify that the United States was subject to reasonable service charges, "regardless of whether that reasonable fee, charge, or assessment is denominated a tax." 33 U.S.C. § 1323(c)(1)(B); *see DeKalb County*, 108 Fed. Cl. at 689 (quoting Pub. L. No. 111-378, 124 Stat. 4128 (2011)). Moreover, no court to our knowledge has ever received argument on, let alone resolved, the issue of whether the third sentence in § 1323(a) waives the United States' immunity from interest. Wilmington believes this is an issue of first impression. For these reasons, the Court's holding in *New York State Department of Environmental Conservation* is inapposite to this case.

In summary, the first two sentences of 33 U.S.C. § 1323 provide a clear, unambiguous waiver of sovereign immunity for claims relating to "local requirements . . . respecting the control

6

and abatement of water pollution," which includes, but is not limited to, "the payment of reasonable service charges." The payment of interest on past due balances for stormwater charges is a requirement set forth in Wilmington's City Code with which the United States must comply. Since the United States' sovereign immunity to interest claims is rooted in both law and rule of law, the separate, distinct waiver set out in the third sentence of § 1323(a)—"This subsection shall apply notwithstanding any immunity . . . under any law or rule of law"—clearly waives immunity to claims for interest.

      **3.**     **The Army Corps of Engineers' Supervising Agency, the Department of Defense, Has Itself Rejected the Argument That the United States Makes Here**

The Army Corps of Engineers' protestations against liability for interest are undermined by DoD's own conclusion in April 2011 that properties of DoD Components, which includes the Army Corps of Engineers, are liable for interest on stormwater changes incurred after January 4, 2011. On April 9, 2012, the Deputy Director of the Energy and Environmental Readiness Division of the Navy distributed a letter establishing "Navy policy regarding payment of reasonable service charges arising under the Federal Water Pollution Control Act (commonly referred to as the Clean Water Act) for stormwater runoff on Navy facilities." Letter from Deputy Dir. of Navy, Energy & Envtl. Readiness Div. (N45), at 1 (April 9, 2012) (hereinafter the "Navy Letter," attached as Ex. A). In § 3, the Navy Letter described an April 20, 2011 memorandum from the Department of Defense—of which the U.S. Army Corps of Engineers is a component by statute[1]—"providing guidance for DoD Components' review of stormwater charges to determine if they are 'reasonable service charges' and thus payable by DoD facilities." *Id.* at 2 (citing Assistant Deputy Undersec'y

---

[1] *See* 10 U.S.C. § 111(b)(6) (Department of Defense is composed of, *inter alia*, the Department of the Army), § 3064(a)(4) (the Corps of Engineers is a branch of the Department of the Army).

of Def. (Installations & Env't) Mem. (April 20, 2011) (hereinafter the "DoD Memo")). The Navy Letter provided a summary of the DoD's criteria for determining whether stormwater charges are payable. *Id.* The summary of DoD's guidance and criteria concluded with the following:

> Note that Clean Water Act Amendments are not retroactive; only those reasonable service charges assessed after January 4, 2011 may be paid by DoD facilities. Interest, penalties, or late fees levied after January 4, 2011 for stormwater charges assessed prior to January 4, 2011 are also not payable.

*Id.*[2]

The Navy Letter clearly implies that DoD concluded that interest levied on stormwater charges assessed after January 4, 2011 are payable.[3] The DoD Memo, as described in the Navy Letter (Exhibit A), does not say that interest is ***never*** payable. Instead, the DoD Memo only identifies what is not to be paid: interest levied after January 4, 2011 for stormwater charges assessed ***prior to January 4, 2011***. *See* Ex. A at 2. Although not expressly stated, the implication of DoD's conclusion seems clear: interest levied for stormwater charges ***after*** January 4, 2011 ***is payable***. After all, if DoD had concluded that it was immune from interest payments, why bother to qualify the last sentence with dates and deadlines? The Army Corps of Engineers' arguments here should be rejected or, at worst, deferred until the complete substance of DoD's conclusions can be reviewed following discovery.

---

[2] Although Wilmington has not yet reviewed a copy of the DoD Memo laying out DoD's precise conclusions or the legal justification for them, Wilmington has sought a copy of the DoD Memo summarized in the Navy Letter via discovery sent to the United States.

[3] The January 4, 2011 date referred to in the DoD memo is the date President Bush signed into law a revision to § 1323. *See DeKalb County*, 108 Fed. Cl. at 689 (quoting Pub. L. No. 111-378, 124 Stat. 4128 (2011)).

B.  **The City Properly Assessed Interest Under Its Ordinance**

The United States' interpretation of the City Code as not authorizing interest charges is incorrect as a matter of law and also contrary to the City's standard billing practices applied uniformly to all customer accounts in accordance with local law. Specifically, while the United States admits that § 45-176(c) allows for interest on past due "sewer system charges," it nevertheless argues that this phrase is too narrow to cover charges related to storm water. Mot. at 1. It is the United States' argument that is too narrow in its restrictive reading of Wilmington Code § 45-176(c) and the scope of Article II (Sewers, Sanitary and Storm Water Rates and Charges) of the Chapter 45 (Utilities) of the City Code.

> Section 45-176(c) sets forth a schedule of interest for unpaid sewer system charges:
>
> [I]f any water facilities charges or water usage charges, or ***sewer system charges***, or any combination thereof***, imposed pursuant to the provisions of . . . article II*** of this chapter are not paid when due, penalty charges equal in amount to . . . nine percent of the entire unpaid balance of such charges shall become due . . . . In addition, interest shall become due . . . on the total amount of any such unpaid charges, but not including any penalties imposed, at the annual rate of 24 percent on the total amount of charges unpaid for up to one year and at the annual rate of 36 percent on the total amount of charges unpaid for more than one year . . . .

Wilmington Code § 45-176(c) (emphasis added). The following points explain why the United States' interpretation of the City Code is wrong.

First, the title of Article II referenced in § 45-176(c) is "Sewers, Sanitary and Stormwater Rates and Charges." "Sewers" is a generic term that broadly encompasses conveyance of ***both*** of the referenced types of water – "sanitary" wastewater (i.e., sewage) and storm water.[4]

---

[4] Wilmington Code, ch. 45 ("Utilities"), art. II (available at https://library.municode.com/de/wilmington/codes/code_of_ordinances?nodeId=PTIIWICO_CH45UT_ARTIISESASTWARACH). Section 45-53 is found in Chapter 45, Article II of the Wilmington Code.

9

Second, to the follow the United States' logic, the use of the term "sewers" alone in § 45-176(c) – and the omission of the term "sanitary" from § 45-176(c) – would mean that the City also could not charge interest on past due accounts for treatment of sanitary wastewater. In other words, the term "sewers" would be rendered meaningless. That would mean interest could only be applied on potable water accounts for facilities and usage. That makes no sense. The reference in § 45-176(c) to "sewers" and "Article II" must refer to sanitary wastewater and storm water.

Third, the fact that § 45-53—which establishes rates and charges for sanitary wastewater and storm water—does not include "sewer" in its title ("Sanitary and Storm Water Rates and Charges") but is found within Wilmington Code's Chapter II on utilities (entitled "Sewers, Sanitary and Stormwater Rates and Charges) reinforces the point that § 45-176(c)'s reference to "sewer system" must include sanitary and storm water for purposes of interest.

Fourth, the City's interpretation of § 45-176(c) of its own ordinance, including the references therein to "sewer systems" and to Article II ("Sanitary and Storm Water Rates and Charges), is consistent with the use of those terms in the statute upon which this case is based, the Clean Water Act. Section 402(p) of the Clean Water Act governs discharges "from a municipal separate ***storm sewer system*** . . . ." 33 U.S.C. § 1342(p)(2)(C) (emphasis added). Section 402(q) of the Clean Water Act also covers discharges "from a municipal ***combined storm and sanitary sewer*** . . . ." § 1342(q)(1) (emphasis added), where "combined sewer" refers to both a blend of storm water and sanitary wastewaters. *See* Compl. at 3, ¶ 10. And of course, § 1323(c)(1)(B) itself refers to both "***separate storm sewer system[s]***" and ***combined sewer systems***, which manage "a combination of stormwater and sanitary waste." 33 U.S.C. § 1323(c)(1)(B) (emphasis added). Congress used the term "sewer" to refer, among other things, the conveyance of storm water. The City did the same thing in § 45-176(c).

Fifth, Wilmington's longstanding interpretation of and reliance upon § 45-176(c) of its own ordinance to charge interest on past due stormwater charges (and on past due sanitary wastewater charges) is entitled to deference. *See State ex rel. Zebley v. Mayor of Wilmington*, 52 Del. 564, 574, 163 A.2d 258, 265 (Del. 1960) ("[W]here a statute is doubtful or ambiguous in its terms, a practical administrative interpretation over a period of time, if founded upon plausibility, will be accepted by the courts as indicative of the legislative intent.").

### C. Wilmington's Complaint Does Not Contain an Express Claim for Penalties

Wilmington's Complaint, when filed, does not contain a claim for penalties against the United States, despite the fact that penalties are allowed under Wilmington Code § 45-176(c). Wilmington acknowledges that the quarterly utility statements upon which the Complaint based its damage claims include an entry marked "Adjustments" on the statement, which is the 9% penalty provided in § 45-176(c). However, Wilmington does not seek penalties from the United States, and any award should be adjusted to exclude the 9% penalty embedded in the quarterly utility statements.

### V. CONCLUSION

The first two sentences of 33 U.S.C. § 1323 provide a clear, unambiguous waiver of sovereign immunity for claims relating to "local requirements . . . respecting the control and abatement of water pollution," which includes, but is not limited to, "the payment of reasonable service charges." Even if this first waiver is determined to be ambiguous, the third sentence of § 1323(a) provides a second, separate, and distinct waiver of sovereign immunity to claims rooted in "any law or rule of law." Since the United States' sovereign immunity to interest claims is rooted in both law and rule of law, there is no plausible way to read the third sentence of § 1323(a) to mean that its broad waiver of sovereign immunity does not apply to claims for interest. The payment of interest on carried balances for stormwater charges is a local requirement, set forth in

Wilmington's Code, with which the United States "shall" comply. Even the DoD, supervisor of the Army Corps of Engineers, apparently agrees that it is liable for interest payments. Lastly, Wilmington's Complaint does not contain a claim that the United States should be held to pay penalties set forth in § 45-176(c). For these reasons, the United States' Motion should be denied.

DATE: December 5, 2017

Respectfully submitted,
CITY OF WILMINGTON, DELAWARE

By Counsel:

/s/ Christopher D. Pomeroy
Christopher D. Pomeroy (Attorney of Record)
Paul T. Nyffeler (Of Counsel)
AQUALAW PLC
6 S. 5th Street
Richmond, VA 23219
chris@aqualaw.com
pnyffeler@aqualaw.com
(804) 716-9021 (phone)
(804) 716-9022 (fax)

Luke W. Mette (Of Counsel)
Rosamaria Tassone (Of Counsel)
CITY OF WILMINGTON LAW DEPARTMENT
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
lwmette@wilmingtonde.gov
rtassone@wilmingtonde.gov
(302) 576-2178 (phone)
(302) 571-4565 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2017, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing by operation of the Court's electronic systems. Parties may access this filing via that Court's electronic system.

By: /s/ Christopher D. Pomeroy