IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CITY OF WILMINGTON, DELAWARE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16-1691C |
| | ) (Judge Williams) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON
THE PLEADINGS ON GOVERNMENT LIABILITY FOR INTEREST AND PENALTIES[1]

Pursuant to Rule 7.2(b) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully files its reply brief in support of its motion for judgment on the pleadings that the Government is not liable for interest.

## STATEMENT OF THE REPLY ISSUES

1. Whether the Court should hold that the "notwithstanding any immunity" language of 33 U.S.C. § 1323(a) explicitly waives the Government's sovereign immunity from interest.

2. Whether any prior existing Department of Defense conclusion that interest claims are payable would control, or even influence, this Court's analysis of the scope of the Government's waiver of sovereign immunity in section 1323(a).

3. Whether the Court should hold that Wilmington City Code § 45-176(c), Wilmington's basis for interest, does not apply to stormwater charges.

---

[1] In its opposition, Wilmington states that it "is not seeking penalties against the United States." Pl. Opp'n to Def. Mot. J. on the Pleadings (Opp'n) 2, ECF No. 25. Based upon Wilmington's "stipulat[ion] that Wilmington's damages award should be adjusted to exclude any such embedded penalties," we withdraw our motion for judgment on penalties. *Id*.

## SUMMARY OF THE REPLY ARGUMENT

In our moving brief, we established that Wilmington's claim for interest fails the "no interest rule," which requires that a waiver of sovereign immunity for pre- or post-judgment interest be separate and distinct from the general waiver of sovereign immunity upon which the suit is based. *Marathon Oil Co. v. United States*, 374 F.3d 1123, 1126-27 (Fed. Cir. 2004), *cert denied sub nom*, *Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 544 U.S. 1031 (2005) (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 314-15 (1986)). Wilmington responds that section 1323(a)'s language that the "subsection shall apply notwithstanding any immunity of such agencies . . . under any law or rule of law" unequivocally waives the United States' sovereign immunity from interest charges. Wilmington is incorrect because section 1323(a) does not explicitly waive the United States' sovereign immunity from interest as Congress has done in other statutes that provide for interest.

Wilmington also counters our "no interest rule" position by alleging that a Department of Defense analysis of section 1323 determined that interest claims are payable. This argument fails because even if such view on interest by the Department of Defense exists, it is: privileged, not binding on the Department of Justice, and unable to result in waiver or judicial estoppel.

Finally, we established that Wilmington code section 45-176(c) does not provide for interest on unpaid stormwater assessments. Wilmington counters that section 45-176(c)'s "sewer system charges" encompass stormwater because sewers carry stormwater. But Wilmington's regulations distinguish between sewer charges and stormwater charges and only provide for interest on "sewer system charges."

REPLY ARGUMENT

I.   Section 1323 Does Not Include An Express Congressional Consent To Interest Awards

There is no dispute that interest requires a specific waiver of sovereign immunity. Opp'n 4; 28 U.S.C. § 2516(a) ("Interest on a claim against the United States shall be allowed . . . only under a contract or Act of Congress expressly providing for payment thereof."); *see also Library of Cong. v. Shaw*, 478 U.S. 310, 323 (1986); *id*. at 317 ("In creating the Court of Claims, Congress retained the Government's immunity from awards of interest, permitting it only where expressly agreed to under contract or statute.") (citing 28 U.S.C. § 2516(a)); *Doyle v. United States,* 931 F.2d 1546, 1550 (Fed. Cir. 1991) ("In *Shaw*, the Supreme Court held that Congress must expressly waive the Government's sovereign immunity from suits for interest payments. . . ."). Where the parties diverge is that Wilmington believes that "[t]he third sentence of § 1323(a) contains a second, broader waiver of sovereign immunity separate and distinct from the first waiver" such that "there is no plausible way to interpret 'notwithstanding any immunity . . . under any law or rule of law' to exclude interest." Opp'n 4-5. We disagree for four reasons.

First, section 1323 does not explicitly waive the Government's sovereign immunity from interest. The Federal Circuit has held that "[a]n allowance of interest on a claim against the United States, absent constitutional requirements, requires an *explicit* waiver of sovereign immunity by Congress." *Fid. Const. Co. v. United States*, 700 F.2d 1379, 1383 (Fed. Cir. 1983) (emphasis in original); *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 798 (Fed. Cir. 1993). Black's law dictionary provides two definitions for explicit: "1. Clear, open, direct, or exact," and "2. Expressed without ambiguity or vagueness; leaving no doubt." Black's Law Dictionary (10th ed. 2014). Wilmington argues that section 1323's phrase "notwithstanding any immunity" is an explicit waiver; but section 1323 neither references interest, nor (to our knowledge) has ever been considered a statute that waives the United States' sovereign immunity from an

3

interest award. *See* § 51:78.Sovereign immunity from interest award, 21A Fed. Proc., L. Ed. § 51:78. Statutes that *explicitly* permit interest include:

- 5 U.S.C. § 5596(b)(1), (b)(2)(A) ("An amount payable under paragraph (1)(A)(i) of this subsection shall be payable with interest.")

- 26 U.S.C. § 7426(g) ("Interest shall be allowed at the overpayment rate established under . . . .")

- 28 U.S.C. § 2411 ("In any judgment of any court rendered . . . for an overpayment in respect of an internal-revenue tax, interest shall be allowed. . . .")

- 31 U.S.C. § 1304 ("Necessary amounts are appropriated to pay final judgments . . . and interest and costs specified in the judgments . . . .")

- 42 U.S.C. § 2000e-16(d) ("The provisions . . . shall govern civil actions brought hereunder, and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties.")

These statutes demonstrate that Congress knows how to draft language that *explicitly* provides for interest—including the term "interest" is a start—and section 1323 lacks equivalent language.

Second, section 1323 lacks an explicit waiver despite the fact that Congress is aware of the requirement that a statute have an explicit waiver. *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts."); 28 U.S.C. § 2516(a).

Third, there is no explicit waiver even though Congress could have added one (in subsection (a) or (c)) to section 1323 when it added subsection (c) in the 2011 amendment.

Fourth, although not binding on this Court, a United States district court in New York has already held that section 1323's sovereign immunity waiver does *not* include interest:

> The CWA [Clean Water Act, 33 U.S.C. § 1323] . . . *do[es] not contain clear and unambiguous waivers of the United States' immunity from prejudgment interest awards* separate and apart from the limited waiver of immunity from suit provided by these statutes. *There is no language in these statutes which states that the United States is liable for prejudgment interest*. Thus, the defendant is

4

> *immune from plaintiff's claim for the same*, and the United States is therefore entitled to summary judgment dismissing that portion of plaintiff's complaint which seeks such an award.

*New York State Dep't of Envtl. Conservation v. U.S. Dep't of Energy*, 772 F. Supp. 91, 105 (N.D.N.Y. 1991), *supplemented*, 850 F. Supp. 132 (N.D.N.Y. 1994) (emphasis added). Wilmington argues that this case is not "persuasive authority" because it preceded "Congress's subsequent revision of § 1323 to clarify that the United States was subject to reasonable service charges." Opp'n 6. Wilmington is incorrect because the district court in *New York State* considered the same section 1323(a) language that Wilmington relies upon and found no explicit waiver for interest. *Id.*; *New York State*, 772 F. Supp. at 96 (opinion setting forth 33 U.S.C. § 1323(a)). That Congress later added subsection 1323(c) to, among other things, permit Federal agencies to pay certain stormwater assessments, does not alter the court's holding.[2]

For these four reasons, Wilmington's counterargument that the phrase "notwithstanding any immunity" is "an *explicit* waiver of sovereign immunity by Congress" must fail. 33 U.S.C. § 1323(a); *Fid. Const. Co.*, 700 F.2d at 1383 (emphasis in original). Thus, the Court should grant judgment in favor of the United States upon Wilmington's claim for interest.

II.  The Alleged View On Interest Of The Department of Defense Is Privileged, Non-Binding On The Department Of Justice, Not A Waiver, And Not A Basis For Judicial Estoppel

Wilmington tries to undermine our no-interest position by extrapolating an alleged view on interest of the Department of Defense from a Department of the Navy letter dated April 9,

---

[2] Wilmington tries to "distinguish" *New York State*, arguing that the district court did not explicitly decide "whether the third sentence in § 1323(a) waives the United States' immunity from interest." Opp'n 6. Wilmington misreads the district court's holding which was that "[t]here is no language in [the CWA] which states that the United States is liable for prejudgment interest." *New York State*, 772 F. Supp. at 105. Implicit in that holding is that the district court rejected the notion that any part of section 1323(a) waived the United States' sovereign immunity from interest.

5

2012.³ Opp'n 7-8. Even if Wilmington has correctly extrapolated the Department of Defense's view—a point we dispute—the view is inconsequential for three reasons.

First, "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516. Absent specific circumstances that are inapplicable here, the Department of Justice establishes the Government's position in litigation and the Government's position is that the no-interest rule applies. *Id.* Thus, it matters not how the *Department of Defense* allegedly interpreted section 1323 in April 2011.

Second, and relatedly, an Executive Branch action (like a Department of Defense memorandum) cannot waive congressionally-imposed conditions for the Federal Government to pay interest. *United States v. Cty. of Cook, Ill.*, 167 F.3d 381, 387 (7th Cir. 1999) ("Executive Branch [agents], including its lawyers, cannot waive the sovereign immunity of the United States. Only Congress and the President, acting together through legislation, may do so."); *Brazil v. Office of Pers. Mgmt.*, 35 F. Supp. 3d 1101, 1116 (N.D. Cal. 2014) ("[A]n agency cannot waive sovereign immunity and thus alter federal court jurisdiction.").

Third, as evidenced by Wilmington's failure to even allege the legal construct, judicial estoppel is not at issue here. The Federal Circuit has described judicial estoppel as:

> an equitable doctrine, designed to "protect the integrity of the judicial process" by "prevent[ing] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine,*

---

³ The document that Wilmington alleges formed the basis for the Navy's "interest" sentence—"[i]nterest, penalties, or late fees levied after January 4, 2011 for stormwater charges assessed prior to January 4, 2011 are also not payable"—is privileged. The document at issue is a communication made in confidence between a lawyer and the lawyer's client (in this case "the Assistant Deputy Undersecretary of Defense (Installations & Environment)"), and the communication was made to provide legal analysis. If deemed necessary, the Government will provide the document for in camera review.

> 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotations omitted). Under the doctrine, courts weigh whether (1) the supposedly contradictory positions are "clearly inconsistent," (2) the party succeeded in persuading the lower court of its earlier position, and (3) the party would derive an unfair advantage from the inconsistent advantage. *Id.* at 750, 121 S.Ct. 1808. The *1249 government urges that judicial estoppel cannot apply to the United States and argues that, in any event, it has not taken inconsistent positions.

*CRV Enterprises, Inc. v. United States*, 626 F.3d 1241, 1248–49 (Fed. Cir. 2010). Even if judicial estoppel could attach against the Government, we have certainly never argued *in litigation* that section 1323 waives the United States' sovereign immunity from interest. In fact, we have consistently taken the position in this Court that the "no interest rule" applies to *bar* interest on stormwater assessments. *See* Def. Reply to Pl. Resp. to Def. Mot. to Dismiss and Resp. To Pl. Mot. for Partial Summary Judgment at 20 n.9, *DeKalb County, Georgia v. United States*, 108 Fed. Cl. 681 (2013) (No. 11-761C).

In sum, the Department of Defense's alleged position is unverified, subject to privilege, not the United States' position as set forth by the Department of Justice, and unable to result in waiver or judicial estoppel.

III. <u>Wilmington Code Section 45-176(c) Does Not Apply To Stormwater Charges</u>

In our moving brief, we established that Wilmington Code Section 45-176(c) explicitly defines the "unpaid charges" that are subject to interest and that stormwater charges are not included. Specifically, the "unpaid charges" encompass "any *water facilities charges* or *water usage charges*, or *sewer system charges*, or any combination thereof, imposed pursuant to the provisions of this article and of article II of this chapter." Wilmington City Code § 45-176(c) (emphasis added). Thus, interest only applies to three types of charges that are not at issue in this case. In its response, Wilmington concedes, as it must, that stormwater charges are not one of the three specifically enumerated charges upon which interest may be levied. Opp'n 9. Even

7

so, Wilmington makes five arguments that stormwater charges are encompassed by the "sewer system charges" provided for in section 45-176(c). Wilmington's arguments are unpersuasive.

First, Wilmington argues that "'[s]ewers' is a generic term that broadly encompasses conveyance of **both** of the referenced types of water – 'sanitary' wastewater (i.e., sewage) and storm water." Opp'n 9 (emphasis in original). Wilmington provides no support for its view and there is a much simpler explanation for Article II's title. Article II's title contains two parts, "Sewers," and "Sanitary and Storm Water Rates and Charges." Correspondingly, Article II contains two Divisions ("Generally" and "Service Charges"). The first Division, entitled "Generally," contains four sections, each of which explicitly relates to "sewer[s]." Wilmington City Code §§ 45-31 ("Assessment against abutting property for sewer main construction."), 45-32 ("Charge for sewer branches from main sewer to curb line."), 45-33 ("Penalties for failure to pay sewer system user charges and for repeated discharges of prohibited wastes."), and 45-34 ("Ownership of the sewer lateral."). Thus, contrary to Wilmington's view, the "Sewers" term in Article II's title does not "broadly encompasses conveyance of **both** of the referenced types of water," it instead references the Division 1 sections that specifically address "[a]ssessment[s]," "[c]harge[s]," "[p]enalties," and "[o]wnership" related to sewers. *Id.*; Opp'n 9.

Second, Wilmington argues that under our reading "the term 'sewers' alone in § 45-176(c) – and the omission of the term 'sanitary' from § 45-176(c) – would mean that the City also could not charge interest on past due accounts for treatment of sanitary wastewater." Opp'n 10. Thus, Wilmington argues, "[t]he reference in § 45-176(c) to 'sewers' and 'Article II' must refer to *sanitary wastewater and storm water*." Opp'n 10 (emphasis added). We disagree. The phrase in section 45-176(c) is "sewer system charges." Section 45-53, which resides under Article II, includes three charges, a "[s]anitary sewer charge," an "[e]xcessive sewage strength

8

surcharge," and a "[s]torm water charge." Wilmington City Code § 45-53(b), (c), and (d). The natural reading of section 45-176(c) is that "sewer system charges" encompasses the two charges with "sewer" or "sewage" in the name ("Sanitary sewer charge" and "Excessive sewage strength surcharge"), *but does not include* the third charge ("Storm water charge") that references neither "sewer" nor "sewage." *Id.* In sum, and contrary to Wilmington's assertion, our interpretation of Wilmington's code permits Wilmington to charge interest on "sanitary wastewater." Opp'n 10.

Third, Wilmington argues that because section 45-53 does not have "sewer" in its title, and "Sewers" is in Article II's title, it must be "that § 45-176(c)'s reference to 'sewer system' must include sanitary and storm water for purposes of interest."[4] Opp'n 10. We disagree for all the same reasons we presented in response to Wilmington's second argument. In short, section 45-176 encompasses two "sewer" charges ("Sanitary sewer charge" and "Excessive sewage strength surcharge") and a "Storm water charge" – there is no reason to bundle the "Storm water charge" together with the two section 45-53 charges that *explicitly state* "sewer" and "sewage."

Fourth, Wilmington turns to the Clean Water Act to argue that the term "sewer system charges" encompasses section 45-53's "Storm water charge." Opp'n 10 (citing 33 U.S.C. §§ 1342(p)(2)(C), (q)(1); *id.* at 1323(c)(1)(B)). But Wilmington's citations support our view because they all include either "storm" or "stormwater," and *never* use only "sewer" to denote a stormwater system. 33 U.S.C. §§ 1342(p)(2)(C) ("municipal separate storm sewer system"), (q)(1) ("municipal combined storm and sanitary sewer"); *id.* at 1323(c)(1)(B) ("whether associated with a separate storm sewer system or a sewer system that manages a combination of

---

[4] We assume that Wilmington intended to reference Article II with its reference to "Wilmington Code's Chapter II." Opp'n 10. "Chapter 2" is entitled "Administration."

9

stormwater and sanitary waste"). If Wilmington wanted section 45-176(c) to include stormwater it should have used language akin to that used in the Clean Water Act.

Fifth, Wilmington argues that its "longstanding interpretation of and reliance upon § 45-176(c) of its own ordinance to charge interest on past due stormwater charges . . . is entitled to deference." Opp'n 11 (citing *State ex rel. Zebley v. Mayor & Council of Wilmington*, 52 Del. 564, 574 (1960)). But Wilmington omits the condition precedent for the *Zebley* Court's conclusion: "We think, in view of the *two divergent possible* and *logical constructions of the statute* in question, that we should accept this administrative interpretation of the law and give effect to it." *Id*. For all the reasons set forth above, there are not "two divergent possible and logical constructions" of section 45-176(c) in this case. *Id*.; *see generally Jones v. Dep't of Transp.*, 295 F.3d 1298, 1307 (Fed. Cir. 2002) ("[A] long-standing interpretation given a statute by the agency charged with administering it should be deferred to *unless it is unreasonable*.") (emphasis added). Even if there were two logical constructions, deference does not foreclose this Court from adopting the United States' interpretation when, as here, the agency's interpretation does not "comport[] with the . . . regulatory language."[5] *Visiting Nurse Ass'n of N. Shore, Inc. v. Bullen*, 93 F.3d 997, 1008 (1st Cir. 1996), *rev'd on other grounds*, *Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50, 59 (1st Cir. 2004).

Because Wilmington's assessments include only amounts allegedly due for "Storm Water Charges" and *do not include* any assessments for "Facilities," "Water Consumption," or "Sewer" charges, Wilmington should not recover interest under section 45-176(c)'s plain language.

---

[5] And, deference seems particularly unwarranted where, as here, the municipality's interpretation likely remains unchallenged because the interest amounts are typically (but not in this case) small, and the cost to challenge such interest amounts is prohibitively high.

Compl. Exs. B-F.  The fact that Wilmington has a long-running practice of charging interest without a proper basis in the Wilmington code does not change that calculus.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in our moving brief, the United States respectfully requests the Court grant our motion for judgment on the pleadings of non-liability for interest.

    Respectfully submitted,

    CHAD A. READLER
    Acting Assistant Attorney General

    ROBERT E. KIRSCHMAN, JR.
    Director


    s/Franklin E. White, Jr.
    FRANKLIN E. WHITE, JR.
    Assistant Director

    s/Douglas T. Hoffman
    DOUGLAS T. HOFFMAN
    Trial Attorney
    Department of Justice
    Civil Division
    Commercial Litigation Branch
    P.O. Box 480
    Ben Franklin Station
    Washington, DC  20044
    Tel:  (202) 353-0547

December 21, 2017    Attorneys for Defendant